The next matter, No. 24-1448 and No. 24-1622, Clodemi-Lasage v. Merrick B. Garland. At this time, would the Council for the Petitioner please introduce herself on the record to begin. Jennifer Bada Good morning, and may it please the Court. Jennifer Bada on behalf of Petitioner Mr. Clodemi-Lasage. With your permission, I would like to reserve one minute for rebuttal. Clodemi-Lasage You may. Jennifer Bada Good morning, and may it please the Court. Jennifer Bada Good morning, and may it please the Court. The Board's failure to grant a motion to reopen, despite the Petitioner presenting clear and material evidence of grounds for relief from removal, was inconsistent with the Board's own precedent and statute. Mr. Lasage had a pending Form I-130 visa petition filed by his U.S. citizen wife, which was now approved on November 12th of this year. Additionally, he had a pending application and still has a pending application for temporary protected status. These facts alone satisfy the legal standards pursuant to Matter of Velarde and 8 U.S.C. 1229A, which require that only a prima facie showing of eligibility, not approval, to warrant reopening. Yet, the Board improperly demanded proof of an approved petition and rejected extensive evidence of bona fide marriage, contrary to its own precedent. Jennifer Bada What about the government's argument that the Board also explicitly said in its decision that your client wasn't actually prima facie eligible for the relief you were seeking because of the way that he came into the country? And so it wouldn't actually matter even if that I-130 had been approved. He just wasn't eligible to get this relief. Jennifer Bada Yes, Judge Riggleman. My reading of the BIA decisions indicated that the Board was concerned about the bona fides of Mr. Lasage's marriage. The Board never explicitly mentioned any prohibitions to him not being able to adjust his status. Therefore, as the Board was so concerned about the bona fides of Mr. Lasage's marriage pertaining to the Form I-130, I would argue that that issue has now been resolved by the I-130 being approved and USCIS independently finding that the bona fides were sufficient for the approval for the I-130. And I think this is page four of the addendum. The BIA says even if the respondent's visa petition is approved, he still has not shown prima facie eligibility for adjustment of status. As the respondent conceded, he was found removable for entering the country without having been inspected or admitted or paroled, and therefore he's ineligible to adjust his status. And that's the argument that the government raises as an alternative basis for the BIA's decision. So could you address that argument? Yes. I believe that regarding that argument, the BIA did not take into consideration that petitioner is now or could become TPS eligible. He has a TPS application pending. And if he is granted TPS, which we believe that he will be, he could apply for advanced parole under 8 CFR 244.15, which allows lawful reentry and therefore subsequent adjustment of status under 245A if he applies for travel parole, leaves the country, has a lawful parole back into the country, and then he could apply for his green card once he has taken advantage of the advanced parole through TPS. But doesn't the board have to look at the facts as they are at the time rather than what may happen in the future? He could at that point apply for the 601A waiver based on extreme hardship to his U.S. citizen wife. And once the waiver is approved, Mr. LaSage could consular process at that time or take advantage of the TPS travel parole and adjust within the U.S. instead of having to leave the U.S. through consular processing. On TPS, the government's response is, well, that's a separate proceeding you could pursue. And then that just wasn't addressed until the reply. So what are we supposed to do with that? I believe we understand that the nature of TPS is that respondent or petitioner can apply and seek TPS independently of these proceedings. But what we would like to argue is that if petitioner cannot get any forms of relief or if we can't, if this court's mandate or if this court issues a mandate that won't allow him to adjust and won't allow him to stay here, basically the next day ICE would deport him immediately to Haiti as flights are still going out to Haiti right now. And then petitioner would no longer be able to take advantage of TPS. The TPS point was raised to the BIA? No, the TPS point was not. Well, the TPS point was raised to the BIA in the motion to reopen. In the motion to reopen. And what did the BIA say about the TPS point? The BIA, as the government has reiterated in its brief, mentioned that it will not take TPS into consideration as petitioner can seek TPS outside of these proceedings. And was there any argument made to the BIA as to why that was not a sufficient response? Our position was that we concede that petitioner can seek TPS outside of these proceedings, but we mentioned it on more of a humanitarian basis because since petitioner has a TPS application pending right now, if he does not get the opportunity to stay here to see if it will be approved, our position is that if he can't get any kind of relief and he can't stay in the country, ICE will deport him. Was that made to the BIA, that argument? Or was it just bare statement? In the motion to reopen, we did mention these things to the BIA regarding to humanitarian. The timing of the TPS, that he needed to have the motion to reopen in order to be able to continue to press the TPS claim? That was not explicitly mentioned, Your Honor. But as I mentioned before, we believe that the board improperly demanded proof of an approved I-130 petition. But since the BIA's denial, USCIS, as I mentioned before, has granted his form I-130. We believe that this evidence is that he does have the bona fides of the marriage that the BIA was concerned about in its initial decision. And as I mentioned, his application... But are you suggesting we can consider that here? I'm sorry, can you say? Are you suggesting we can consider that here? Yes, I believe that it should be considered in these proceedings. The granting of that wasn't before the BIA? No, it was not before the BIA. The granting of the I-130 petition didn't happen until recently. It was granted on November 12th of this year, which has not been brought before the BIA yet. And it is our position that if this court would like to remand the case, that we could then bring these new changed circumstances before the board to warrant reopening of Mr. LaSage's proceedings. But you could do that in just a new motion to reopen anyway, right? I'm sorry? Couldn't you do that in a new motion to reopen? We could, Your Honor, we could. But it's our position that since the... Then it would be a motion that would have to be sui sponte or would it not have to be? Correct. Because you're a number board? Well, I don't believe that there is a time limit because the approval of the I-130 would warrant changed circumstances, which my understanding is that there is no time limit when it comes to materially changed circumstances when filing a new motion to reopen. But it's our understanding that the motion to reopens are discretionary, they're not mandatory. I believe that if this court is amenable to remanding the case to the BIA, that the approved I-130... Just so I understand what's happening here. The BIA says even if Respondent's visa petition is approved, he's still not shown prima facie eligibility for adjustment because he entered the country without inspection. And then, nonetheless, the adjustment occurred? Am I missing? I'm sorry, could you... I'm just not understanding what has now happened that hadn't happened before? So what has now happened that hasn't happened before is, one, Mr. LaSage still has a pending TPS application, but the main difference now is that the I-130 was approved. And it's our understanding based... That's the visa petition that the BIA is referring to? Yes. And that's what I'm just trying to square. It says even if the visa petition is approved, he's not shown prima facie eligibility for adjustment of status. So is that the next thing he has to do is then seek adjustment? Correct. And this kind of relates back to the point I was trying to make earlier that it's our position that the BIA did not actually take into consideration the potential possibility of the 601A waiver, which is a very commonly used application in these types of cases in order for individuals to be able to adjust. But I guess what I'm... Nothing has changed then in a sense that wasn't already considered by the BIA? I don't believe that to be true. They were already contemplating that the petition might be approved, the visa petition, right? No, that's not my reading of it. It says even if the response visa petition is approved, he's still not shown prima facie eligibility for adjustment of status. Yes. What you're telling us now is the visa petition was approved. Yes. But he still has not established prima facie eligibility for adjustment of status. I believe that we would be able to establish that in the reopening by explaining... But on this record, there's nothing to indicate that he has shown prima facie eligibility for adjustment of status, is there? I believe the approval of the Form I-130 does establish the bona fides of the marriage, which would help Mr. Lesage adjust eventually. Thank you. If there's no further questions, thank you. Thank you, counsel. At this time, counsel for the government will please introduce himself on the record to begin. Thank you, Your Honors. Todd Cochran on behalf of the Attorney General. A couple of points I wanted to address that were raised during the Petitioner's Counsel's time. Number one, the board did say specifically that he's ineligible to adjust because he entered without inspection. Now, in terms of the process question that the Chief Judge was asking about, he asked the I-130 once that's approved, and the USCIS just looks at, is it a legitimate marriage between Mr. Lesage and his U.S. citizen wife? No discretion comes with that, just that they prove they're actually married. And the board did contemplate that might be granted. That now has been granted as of three or four weeks ago as Petitioner's Counsel raised. Now, in order to get his lawful permanent residence status with the green card, he has to adjust his status or consular process. Adjustment of status occurs here in the United States without departing consular process. You have to leave to your country of origin or some other third country in certain circumstances, like might occur here. In order to do that, because he has a final order of removal, he needs a number of waivers that he would have to seek, which goes with the speculative nature of what Petitioner wants to do in this case, which is not in the record here on this case. Can I get all that back? Yes. Just taking that same logic, though, which implicit in it is the notion that, I take it if he didn't have, if he did have a prima facie eligibility for adjustment of status and the petition was approved, the implicit idea is maybe the motion to reopen would be looked on more favorably. Perhaps. But we don't have that here, right? Correct. Okay, but then taking that same logic, why wouldn't the same logic apply to the TPS? In other words, is there any reason to think he's not going to get TPS? I don't know the criteria for why TPS is granted by USCIS. What you're telling me is that the BIA's reason for rejecting the TPS ground seems to be just that there's a separate process, but so what? Is that a good reason to deny a motion to reopen? It is a separate process, Your Honor, and it doesn't prevent it. There's always many, many things for which you seek a motion to reopen, and the whole idea is I've got a very good chance of getting it, so won't you reopen so that I have a chance of getting it? And it seems like the BIA, and I think in general, many times, the BIA is open to that type of argument. Here, with respect to the TPS, they just say because it's a separate process, that's the end of it, and I don't fully understand that logic. Well, because Mr. Lesage is in removal proceedings here. TPS is separate from that. If he is granted TPS, it doesn't stay or go away as final order of removal. That remains intact. It simply would then, at that point, it would prevent ICE or DHS from actually removing Mr. Lesage to Haiti. So it's so – So it has nothing to do with – It does not. It has nothing to do with reopening the removal process. Correct. And the same thing with the I-130. It's a whole separate process. Yes, the I-130 was granted on November the 12th. The right move for him is to seek a stay of removal or something like that as he's waiting for the TPS or something like that. I presume so. This Court has granted him a stay of removal currently in this case. We did, yeah. You did. But, you know, really what he wants is he wants the case to be reopened. I'm asking, what are you supposed to do if you are in a situation where you're eligible for TPS, you're waiting for it to happen, and you've got this removal because the – you know, presumably TPS exists because the place you'd be sent back to would be a particularly problematic place to go to in many instances. So you would think a functioning system would not want in one hand to be sent – you've got to go back there. On the other hand, you're on the cusp of saying, no, you should actually be able to stay because we have to protect you from going back there. I don't – I'm not an expert on the TPS grants, certainly. I think I lost my train of thought, Your Honor. He can be removed to a third country if the removal is enforced in this situation. I also think what he's wanting to do here is he's wanting more time to wait for the TPS. I think, Your Honor, he's getting more time for the TPS to be considered and granted. You have a sense of how this operates in which the person who is on the cusp of getting TPS has some chance of avoiding a situation where they're being removed, notwithstanding that the government is fully prepared to give persons of that type TPS status. I understand why you're saying the right way to do that is not to reopen the removal proceeding. That may not relate to the order of removal itself, but I'm just wondering what are you supposed to do? I don't know what he's supposed to do. He certainly isn't a predicament, and a lot of that is of his own making. He entered the country without inspection. He was convicted of assault and battery on his pregnant wife, which got him convicted of that in Massachusetts, and then ICE picked him up. So the fact that he may be removed back to Haiti or some third country is a situation of his own making. I understand there's this parallel process of the TPS and the consular processing that he would like to do, but he doesn't have a right to be in the United States, and in the meantime while he was here he also committed a pretty bad crime, which the discretion comes in to all these different levels that he would need. And I believe for TPS, I know it does for the consular processing adjustment of status, certainly all the waivers he would need to seek have a discretion baked into them, as does the actual grant of the lawful permanent residence status. So he is, I agree, he is somewhat of a tenuous predicament in terms of how these different processes play out, but there's really no reason, and the board said there's really no relief the board can grant here related to the TPS and the visa petition down the road to the consular processing, so there's no reason, there's no relief they could grant on this motion to reopen. One last question on this. If I have TPS, I've been granted TPS, can that not, I've already got it. Yes. That's of no consequence for my removal proceeding? It is not. All it does is it prevents the U.S. government from removing that individual to that country, Haiti in this instance. The removal order stays intact, but they just can't be physically removed to that country. Counsel, what about the 601A argument that Petitioner's Counsel has been making? Is that something that the BIA should have considered here, that he could eventually be prima facie eligible for adjustment of status? Not on this record, Your Honor, because that's one of the many waivers that he would have to seek. I started to talk about this earlier. From my analysis, there's at least two waivers, perhaps more, he would have to seek. He would have to get an I-212, because he has a final order of removal, which is consent to reenter. So he would have, because he was an entry without inspection, EWI, you often hear it called, he has to go consular process. So he can apply for this I-212 before departing, which allows him the permission to come back in down the road. He would have to do that. Then there's the I-601, which is the unlawful presence waiver. He's been here long enough. He's accrued unlawful presence. He would also have to seek that to be allowed to come back in. The I-601A is simply the one you can apply without departing. You can ask for that unlawful presence waiver while in the U.S., be given assurances that you'll be allowed back in once you leave. So that's all subsumed, in your view, by the statement, he hasn't shown prima facie eligibility? Correct, Your Honor. And were those points raised to the BIA by the Petitioner, the possibility of the waivers? Was that even before the agency? I don't believe so, but I don't know for sure. That's probably a better question to ask my counsel here. If the Court has no further questions, the Government will rest on its briefs. Thank you. Thank you, Your Honors. Thank you, Counsel. Would Counsel for the Petitioner please reintroduce herself on the record? She has a one-minute rebuttal. Good morning, and may it please the Court. Jennifer Bott on behalf of Claudia Milosage. The Government argues that Mr. Milosage cannot demonstrate prima facie eligibility for relief through adjustment of status or TPS. This claim is now entirely undermined by the approval of Mr. Milosage's Form I-130, which was approved on November 12, 2024. The USCIS has independently affirmed the bona fide nature of Mr. Milosage's marriage to his U.S. citizen wife, which is the foundation of his eligibility for adjustment. Moreover, pursuant to the Calderon Settlement, which will likely go into effect on January 17, 2025, Mr. Milosage fits squarely within the class of individuals who are presumptively entitled to a motion to reopen and dismiss of removal proceedings. Counsel, how do you think the settlement should impact our analysis of the decision here by the agency? I believe the settlement is going to impact this procedure materially, because pursuant to the settlement, Mr. Milosage does fit squarely into the settlement, which prescribes that a class member is someone who has a final order of removal, someone who has an approved Form I-130. And in this case, Mr. Milosage has these requirements. Does it encompass people who enter without inspection? Yes, it does. And in this case, the settlement also prescribes that basically DHS would be required to join in this motion to reopen if somebody fits into the settlement and also has no bars, such as if somebody committed immigration fraud, which Mr. Milosage has not, or if somebody committed an aggravated felony or a particularly serious crime, which Mr. Milosage has not. He has a misdemeanor conviction that is currently on appeal. Therefore, we believe he would fit squarely within the settlement and that DHS would be compelled to join a motion to reopen Mr. Milosage's proceedings. Has the effect of Calderon been, I take it this case hasn't been considered for mediation? It has not, no. Would you be open to it? Yes, we would be open to the CAMP program. Thank you. Thank you very much. This is for the government before you sit down. Just come up just for a second. Yes, Your Honor. With respect to us referring this to CAMP in light of the Calderon settlement, does the government have a view on that? Yes, Your Honor, the government does have a view on that. The Calderon settlement, Mr. Milosage was confirmed, yes, he is a class member. But in that agreement, which is not even finalized yet, there's a hearing I believe on January 16th of next year to finalize it, the government has the right to exercise its discretion to accept an individual from the settlement agreement and not join the motion to reopen. And in May of this year, the government informed class counsel that Mr. Milosage specifically, they were going to seek to do that. And I've advised counsel of that prior to today as well. Not join. Well, they didn't specifically not join, but they advised their intention to seek his removal, and they specifically referenced his Massachusetts assault and battery conviction in that email to class counsel. And so I take it with respect to CAMP. If the court would like the government to participate, of course the government would, but I don't think it is necessary, Your Honor. Okay, thank you. Thank you, Your Honors. Thank you, counsel. That concludes argument in this case.